IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES ANTELL,<br>                Plaintiff, | :<br>: |
| | :   CIVIL ACTION |
| v. | : |
| | :   NO. 13-1482 |
| **FIRST NIAGARA BANK,** *et al.*, | : |
|                 Defendant. | : |

**MEMORANDUM OPINION**

R<span style="font-variant:small-caps">UFE</span>, J.                                                                                                                                         A<span style="font-variant:small-caps">PRIL</span> 7, 2013

      Before the Court are Charles Antell's Amended Complaint and Defendants' motions to dismiss it, as well as Antell's motion for leave to file his proposed Revised Second Amended Complaint and the Citi Defendants' response in opposition. For the reasons that follow, the motion to dismiss will be granted and leave to amend denied.

**I.     Introduction**

      Charles Antell, *pro se*, has sued several banks, including First Niagara Bank, successor to Harleysville National Bank, which issued him a mortgage; several companies affiliated with Citibank ("the Citi Defendants"), the owner of a security backed by Antell's mortgage; and US Bank, trustee for the pool of securities that the Citi Defendants invested in.

      Antell seeks leave to file his Revised Second Amended Complaint, and Defendants oppose it, arguing that the proposed document is not substantially different from either the Complaint or the Amended Complaint. The Complaint failed to allege facts that supported a cognizable legal theory, and therefore the Court dismissed it. The Amended Complaint winnowed down the allegations and sought relief for breach of contract and an injunction against foreclosure, arguing that securitizing a mortgage destroys a holder's security interest. Defendants moved to dismiss the Amended Complaint, and Antell replied by seeking leave to file a Second

Amended Complaint, which changed the legal theory under which Antell sued to a quiet title action.[1] Defendants opposed the motion for leave, and Plaintiff then moved to file a Revised Second Amended Complaint, alleging several new claims.

Antell's motion for leave to file the Revised Second Amended Complaint renders his motion to file the Second Amended Complaint moot. The Court assesses first the proposed Revised Second Amended Complaint and determines that because it fails to state a claim on which relief may be granted, the motion for leave to file will be denied as futile.[2] The Court also concludes that the Amended Complaint also fails to state a claim on which relief may be granted, and therefore the motions to dismiss the Amended Complaint will be granted.[3] The dismissal will be with prejudice because Plaintiff has failed four times to state a claim for relief, and further amendment would be futile.

---

[1] Although the Second Amended Complaint makes glancing references to breach of contract, Antell never develops this theory of liability. The bulk of his complaint alleges that the Defendants failed properly to record the transfer of the security interest in the property, not that the contract creating the mortgage contained some provision that any defendant breached. Read liberally, Antell could be understood to argue that the security interest in his property was not assignable, since his prayer for relief seeks "all monthly payments starting from the Breach of contract in April 30th 2007 in the Plaintiffs Mortgage," and the complaint earlier alleged that on "April 30, 2007 the Plaintiffs Mortgage had been sold and was being used in a process named Securitization by the Defendants." Second Am. Compl., Doc. No. 33-1 at p.8, p.4 ¶27. However, he points to no facts whatsoever, such as for example, language in his mortgage contract, to support the inference that there was a clause prohibiting assignment.

[2] "After amending once or after an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.' Fed.R.Civ.P. 15(a)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (internal quotation marks and citations omitted).

[3] In order to survive a motion to dismiss, a complaint must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* While a plaintiff need not set out detailed factual allegations, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## II. Proposed Revised Second Amended Complaint

### A. RESPA Claims

Antell asserts violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), specifically that Defendants failed to respond to his "qualified written requests," in violation of 12 U.S.C. § 2605(e). Section 2605(f)(1) provides that in the event of a failure to reply to a qualified written request, a lender shall be liable for "an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." However, Plaintiff fails to allege that he has suffered any damages from the banks' failures to respond to his requests, and therefore the banks cannot be liable to him under the statute.

### B. TILA Claims

Antell also alleges violations of the Truth in Lending Act ("TILA"), which, among other things, requires that when a mortgage loan is transferred to a new owner the transfer must be disclosed to the mortgagor.[4] However, as far can be seen from the proposed Revised Second Amended Complaint and the Securitization Audit[5] that Antell attaches to it, the last act he complains of occurred on April 30, 2007. The TILA claim is thus barred by the one-year statute of limitations and the fact that the section of TILA under which Antell proceeds was enacted in 2009 and is not retroactive.[6]

---

[4] 15 U.S.C. § 1641(g)(1).

[5] Defendants argue that the Securitization Audit is the work of a huckster peddling a well-known scam that the FTC has warned consumers about. *See*, *e.g.*, http://www.consumer.ftc.gov/articles/0130-forensic-loan-audits. The Court will nonetheless treat the statements in the audit as true for the purposes of this Memorandum Opinion, even though the audit does seem to conform with the scam the FTC has described.

[6] 15 U.S.C. §1640(e); *Le v. 1st Nat'l Lending Servs.*, 13-cv-02543, 2013 WL 6170630, at *4 (N.D. Cal. Nov. 20, 2013)

### C.     PSA Claims

The proposed Revised Second Amended Complaint also states that US Bank and the Citi Defendants are in breach of the requirements of the Pooling Service Agreement ("PSA") that governs the trust in which Antell's mortgage is held. However, since Antell is neither the trustee nor the beneficiary of the trust, under New York law (which Antell alleges governs the terms of this trust), Antell lacks standing to sue under the PSA.[7]

### D.     Pennsylvania Recording Statute

Antell argues that the transfers of his mortgage violate Pennsylvania's recording statute.[8] That statute requires recordation of mortgages, but under Pennsylvania law, the assignment of a mortgage need not be recorded for the assignee to accede to the rights of the original mortgagee.[9] Antell does not allege that Harleysville failed to record the mortgage, and therefore he fails to state a claim under the recording statute.

### E.     Conclusion with Respect to Proposed Revised Second Amended Complaint

The proposed Revised Second Amended Complaint alleges violations of RESPA, TILA, the terms of the PSA, and Pennsylvania's recording statute. None of these allegations states a claim on which relief may be granted. The proposed Revised Second Amended Complaint makes certain references to other laws, but not with sufficient factual allegations for the Court to understand what exactly it is that Antell claims. Because the proposed Revised Second Amended Complaint fails to state a claim on which relief may be granted, amending the complaint as described in the proposal would be futile, and therefore leave to amend will be denied.

---

[7] *Anh Nguyet Tran v. Bank of New York*, No. 13-580, 2014 WL 1225575, at *3–4 (S.D.N.Y. Mar. 24, 2014).

[8] 21 Pa. Stat. & Cons. Stat. Ann. (Purdon) §§ 351, 356.

[9] *In re Alcide*, 450 B.R. 526, 536 (Bankr. E.D. Pa. 2011); *US Bank N.A. v. Mallory*, 982 A.2d 986, 992 (Pa. Super. Ct. 2009).

**III.    Amended Complaint**

Because leave to amend will be denied, this Court must consider whether to dismiss the operative Amended Complaint. For the reasons that follow, the motion to dismiss the Amended Complaint will be granted.

   *A.    Lending Money, Lending Credit*

Antell's Amended Complaint alleges that "Defendant breached the contract by not loaning money."[10] It is unclear what he means by this statement. Later in his complaint, he states, "Defendant may have only 'lent credit' in this instant matter."[11] From these statements, and mindful of his first complaint's more prolix allegations about lending credit as opposed to lending money, the Court concludes that Antell is alleging that Harleysville Bank opened a line of credit for him instead of giving him cash or a cash equivalent when he obtained his mortgage. However, Antell does not allege that he was damaged in any way, since he does not state that the line of credit had less value than a loan of "money." He therefore cannot sustain a claim for breach of contract,[12] and the claim must be dismissed.

   *B.    Injunction Against Foreclosure*

Antell also seeks an injunction against foreclosure; read liberally, his complaint could also be seen to seek a declaratory judgment that securitization of his mortgage rendered the note unenforceable.

---

[10] Doc. No. 28 at p.2 ¶4.

[11] Doc. No. 28 at p.6 ¶9.

[12] *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002) ("Three elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." (internal quotation marks and alterations omitted)).

Because no bank has initiated foreclosure proceedings against Antell, it is appropriate to construe his complaint as seeking a preliminary injunction, which would require him to demonstrate the likelihood of success on the merits of a foreclosure action.[13] Similarly, prevailing on a declaratory judgment action that the note is unenforceable requires proving the claim.

Any dispute about foreclosing on Antell's property is not ripe for decision. In evaluating ripeness, courts "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[14] Issues are fit for judicial decision when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" a judgment.[15] Here, Antell does not allege that any entity has or is likely to take a foreclosure action against him. Adjudicating this case would therefore serve no purpose beyond creating an impermissible advisory opinion on the status of the rights and responsibilities of Antell and the various defendants.

Therefore, Antell's foreclosure-related claims are dismissed.

## IV.     Remedy and Conclusion

Antell's Amended Complaint and Proposed Revised Second Amended Complaint fail to state a claim on which relief may be granted. Antell has filed four complaints with this court. Three of them fail to state claims, and the fourth is moot. The underlying facts in this case seem to be that First Niagara Bank securitized Antell's loan, and Antell wishes it had not done so. However, his mortgage was fully assignable, and in the absence of some allegations of action

---

[13] *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

[14] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

[15] *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972).

that the lenders have taken that caused harm to Antell, there does not seem to be a plausible claim he can state related to the securitization.[16] Therefore, further amendment would be futile, and the Amended Complaint will be dismissed with prejudice, except with respect to the unripe claims that seek to defend against a foreclosure action. The Amended Complaint is dismissed without prejudice to Antell's right to file a new action in the appropriate court seeking an injunction or a declaratory judgment (or to assert his legal theories as defenses) in the event that those claims ripen.

An Appropriate Order follows.

---

[16] Doc. No. 36-1 at p.95, ¶20 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times wlthout prior notice to Borrower.").